FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 26, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANGEL P.,[1]

               Plaintiff,

     v.

LELAND DUDEK, Acting
Commissioner of Social Security,[2]

          Defendant.

No.   2:24-cv-348-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

      Plaintiff Angel P. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits because the ALJ failed to adequately develop the record, resulting in a decision unsupported by substantial evidence. The Court agrees. This matter is remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# I.    Background

On September 14, 2021, Plaintiff applied for benefits at the age of 51 under Title 16, with the alleged disability beginning as of that filing date.[3] Plaintiff claims she is unable to work due to breast cancer, fibromyalgia, osteoarthritis in her hip and back, depression, and hip and knee problems.

## A.    Summary of Medical Treatment

From May through October 2021, Plaintiff received chemotherapy treatments for breast cancer that was diagnosed in April 2021.[4] Plaintiff also sought treatment in the summer and fall of 2021 for migraines and pain in her neck, low back, left hip, and left knee.[5] Plaintiff was referred to orthopedic services,[6] who she saw in October 2021, where she was observed with an antalgic gait, an assistive device, mild edema in the left knee, minimal tenderness in the left hip and SI joint, discomfort in the low back, and a mildly positive straight leg raise in seated and supine positions.[7] Her range of motion of her bilateral hips was reduced, although she had full strength with mild discomfort with abduction and

---

[3] AR 186–202, 77.

[4] AR 292–300, 340–417, 418–50, 666–73, 740–47, 818–25, 833, 864–94.

[5] AR 640–43, 939–41.

[6] AR 487–89.

[7] AR 488–89.

internal rotations.[8] The x-rays of her bilateral hips revealed grade 2 changes with the presence of definite osteophytes on the femur and acetabulum with subchondral sclerosis and possible joint space narrowing.[9]

In November 2021, a lumpectomy was performed to remove the cancerous breast tumor.[10] From December 2021 through March 2022, Plaintiff had radiation to address her breast cancer.[11]

In April 2022, Plaintiff returned to treatment for her left hip and left knee pain.[12] She was observed with a normal gait and station but with decreased left hip range of motion and with left knee and left hip pain.[13] The next month she began physical therapy for her left hip, which she continued through June 2022.[14] During the initial physical therapy examination, she was observed with an antalgic gait, favoring the left lower extremity, with reduced motion in her hip and knee: hip flexion, 2/5; hip extension 2+/5; hip abduction, 2+/5; knee flexion, 3/5; and knee

---

[8] AR 488–89.

[9] AR 489, 517.

[10] AR 476–81.

[11] AR 714, 985, 1124–25, 1345.

[12] AR 960.

[13] AR 962.

[14] AR 992–93, 1007–17.

extension 2+/5. She had a positive result with Scour and FABER on her left hip.[15] The examiner noted "[t]his patient has an incredibly unstable [left] femoral-acetabular joint."[16]

Plaintiff had follow-up oncology appointments from March 2022 through August 2023.[17] Several initial oncology treatment notes state that Plaintiff continues to be fatigued and she had lasting "zinger" nerve pain in the right breast and right armpit.[18] Plaintiff continued to have occasional loss of sensation in the right arm, but by August 2023, Plaintiff reported that her right upper extremity lymphedema had improved, with some physical therapy exercises, although it did come back every now and then.[19] She also reported that she continued to have routine intermittent migraines, which had become worse for a short period of time after hitting her head in December 2022.[20]

In February 2023, Plaintiff again sought treatment for her hip, advising that she was "ready to get her hip and pain figured out now" given that her cancer

---

[15] AR 1008.

[16] AR 1008.

[17] AR 994–06, 1019–25, 1124–31, 1311–17.

[18] AR 985–90, 994–1005, 1345–57, 1125–31.

[19] *Id.*

[20] AR 1003–06, 1019–25.

treatment was complete.[21] She was referred to physical therapy: "anticipate . . . a referral to ortho and/or for additional imaging."[22]

**B.    Summary of the Administrative Process[23]**

As part of the initial-disability review, Wayne Hurley, MD, reviewed the medical records available as of March 1, 2022.[24] Dr. Hurley assessed Plaintiff with the following severe impairments: osteoarthrosis and allied disorders, malignant neoplasm of the breast, lumbar spinal stenosis, and disorders of the skeletal spine.[25] Dr. Hurley agreed with the disability examiner's assessment that "claimant did not have sufficient evidence on functional capabilities with diagnoses of bilateral osteoarthritis of the hips, spondylosis of the lumbar region, and primary osteoarthritis of the left knee. I tried to contact her and her attorney with

---

[21] AR 970.

[22] AR 972.

[23] The Court's summary and analysis focuses on the medical opinions and the ALJ's analysis pertaining to Plaintiff's physical conditions, as error is required on this basis alone. Of note, there also is no psychological medical opinion of record.

[24] AR 105–107.

[25] AR 105.

no replies. Claimant failure to cooperate."[26] Therefore, no RFC was associated with the claim by Dr. Hurley.[27]

Months later, as part of the reconsideration, the disability examiner noted that he had called the claimant without any contact as the line was disconnected and also spoke with the claimant's representative, who also said claimant had not responded to multiple attempts by the representative.[28] Dr. Susan Clifford reviewed the reconsideration record available to her as of September 3, 2022, and determined that the "evidence in file is insufficient to fully rate the claimant's alleged physical impairments" of osteoarthrosis and allied disorders and malignant neoplasm of the breast.[29] The Personalized Disability Explanation text states, "Under the law, the applicant is responsible for furnishing evidence to support the claim. Although you have been requested to furnish additional evidence, you have not done so. Therefore, a determination has been made based on the evidence in file. This evidence does not show that you are disabled."[30]

After the agency denied benefits, additional medical records were added to the file, including Plaintiff's physical therapy records and cancer treatment

---

[26] AR 106 (cleaned up).

[27] AR 107.

[28] AR 114–15.

[29] AR 116–17.

[30] AR 121.

records.[31] Plaintiff requested a hearing before an ALJ.[32] In October 2023, ALJ Kathryn Preston held a telephone hearing, at which Plaintiff and a vocational expert testified.[33]

Plaintiff testified that she had previously worked part-time as a cook, ending her employment in July 2019.[34] She shared that she lived with her 4-year-old nephew, who she adopted and has cared for since he was 9 months old.[35] She testified that her nephew is largely independent, but she does help him shampoo his hair and get dressed.[36] He attends preschool most of the day.[37]

She stated she has difficulty seeing the doctor because she does not have a driver's license and must get rides from her two adult sons.[38] Plaintiff testified that she has migraines, back and hip pain, back spasms, and difficulty lifting things, sitting, standing for more than 30 minutes, or walking more than a block.[39] She

---

[31] AR 104–22, 949–1360.

[32] AR 147.

[33] AR 70–121.

[34] AR 139–51.

[35] AR 82.

[36] AR 86.

[37] AR 86.

[38] AR 83, 94.

[39] AR 83, 92.

testified that she uses a cane if she goes to the store, but does not need to use it at home as she hangs onto the wall or counters.[40] She sits most of the day until her hips begin to bother her and then she lays down; she also experiences swelling in her knees, ankles, and feet.[41] She testified that she has good and bad days, with more bad days then good.[42] She said that she had been getting migraines every other day but now she has them about once per week and they last about 3–5 hours.[43]

She shared that her right arm will spasm, her hands will lock up, she is unable to reach above her head, and she has trouble lifting a gallon of milk but she was able to lift a 10-pound bag of sugar recently.[44] She takes medication for her blood pressure, allergies, asthma, nerves, and nighttime pain.[45] She testified that during a typical day she washes a couple dishes and vacuums her small house.[46]

---

[40] AR 91–92.

[41] AR 83, 96.

[42] AR 83–84, 98.

[43] AR 89.

[44] AR 84–85, 93–94.

[45] AR 83, 88.

[46] AR 85.

She is independent with her personal hygiene but she uses a shower chair.[47] She

stated that she goes the bathroom every half hour.[48]

After the hearing, Plaintiff submitted medical records from her orthopedic

specialist.[49] The ALJ then issued a written decision denying benefits.[50] The ALJ

found Plaintiff's alleged symptoms were not entirely consistent with the medical

evidence and other evidence.[51] The ALJ considered the lay statement from

Plaintiff's adult son.[52] As to prior administrative medical findings, the ALJ stated

"the record includes no prior administrative medical findings as the state agency

medical consultants concluded there was insufficient evidence to assess this claim.

As the record at the hearing level presents an adequate basis for evaluating the

claimant's allegations, these state agency reports are unpersuasive."[53] As to

medical opinions, the ALJ recognized the record contained Performance Status

ratings in the oncology treatment notes, indicating that Plaintiff had a

---

[47] AR 85.

[48] AR 96.

[49] AR 1362–74.

[50] AR 17–29. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines

whether a claimant is disabled.

[51] AR 25–26.

[52] AR 231–38.

[53] AR 27.

Performance Status of level one, corresponding to being "ambulatory and able to carry out light or sedentary work" but unable to perform "physically strenuous activity," which the ALJ found somewhat persuasive.[54]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 14, 2021, the protective filing date.

- Step two: Plaintiff had the following medically determinable severe impairments: right breast cancer - status-post lumpectomy, chemotherapy, and radiation; bilateral hip osteoarthritis with left psoas tendonitis; left knee osteoarthritis; lumbar degenerative disc disease; radiculopathy; migraine; asthma; and obesity.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work:

  Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is unable to engage in overhead reaching with the right upper extremity.

---

[54] AR 26-27.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cashier, merchandise marker, and sales attendant.[55]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[56]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[57] Substantial evidence is "more than a mere scintilla but less than

---

[55] AR 20–29.

[56] AR 4–9.

[57] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

1  a preponderance; it is such relevant evidence as a reasonable mind might accept as

2  adequate to support a conclusion."[58]

### III.    Analysis

Plaintiff argues the ALJ failed to develop the record—a record that does not

contain a medical opinion—instead relying on her own lay assessment of the

medical records to estimate the severity and limiting effects of Plaintiff's

impairments, thereby failing to fully account for Plaintiff's limitations when

crafting the RFC. The Commissioner argues there was no need for the ALJ to

further develop the record because the record was adequate to support the RFC. In

addition, the Commissioner argues that Plaintiff waived this argument. As is

explained below, without a medical opinion, the ALJ failed to fully develop the

record, and Plaintiff is not foreclosed from arguing that the RFC is not supported

by substantial evidence.

---

[58] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1    **A.    Develop the Record**

2        "The ALJ always has a special duty to fully and fairly develop the record" in

3    order to make a fair determination as to disability, even where, as here, the

4    claimant is represented by counsel.[59] This "affirmative responsibility to develop the

5    record" is necessary to ensure the ALJ's decision is based on substantial evidence.[60]

6    This duty is triggered "when there is ambiguous evidence or when the record is

7    inadequate to allow for proper evaluation of the evidence."[61]

8        As an initial matter, the Commissioner argues that Plaintiff waived any

9    argument that the ALJ failed to develop the record because Plaintiff's

10   representative submitted records from the orthopedic office post-hearing to the

11   ALJ and requested that the "post hearing development stage of this claim be closed

12   and a decision made at your earliest convenience" "unless there is pending evidence

13   from a consultative examination or from medical or vocational experts."[62]

14

15   _____

16   [59] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up). *See Mayes v.*

17   *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

18   [60] *Celaya*, 332 F.3d at 1184.

19   [61] *Id.* at 459-460.

20   [62] ECF No. 10 at 3–4 (citing AR 283 and relying on *Flynn v. Comm'r Soc. Sec.*

21   *Admin.*, No. Cv-20-08308-PCT-MTL, 2022 WL 3552433, at *3 (D. Ariz. Aug. 18,

22   2022) (collecting cases).

23

It is the ALJ's duty to ensure there is substantial evidence supporting her decision.[63] While Plaintiff would have been better served if her representative affirmatively requested that a consultative examination be conducted or testimony received from a medical expert at the hearing, any such oversight by the representative does not foreclose Plaintiff's challenge here to the lack of substantial evidence supporting the crafted RFC.

There is no prior administrative finding or medical opinion of record identifying Plaintiff's functional limitations. The ALJ highlights that the oncology treatment notes include ECOG "Performance Status" ratings:

> At an October 2021 visit, for example, the claimant was found to have a Performance Status of level one, corresponding to being "ambulatory and able to carry out light or sedentary work" but unable to perform "physically strenuous activity" (see, *e.g.*, *id.* at 16; see also, *e.g.*, Exhibit 12F at 16 (continuing to rate the claimant's Performance Status at level one as of December 2022)). The supportability and consistency of these assessments are limited as there is no evaluation of the claimant's ability to carry out specific basic work activities, the assessments are unaccompanied by any narrative explanation, and the assessments do not appear to account for the claimant's entire combination of impairments including not just her cancer but also her hip, knee, and spine arthritis (see Exhibit 3F; Exhibit 8F; Exhibit 10F; Exhibit 12F). To the extent these Performance Status ratings appear to state a maximum capacity for light work as defined in the regulations, however, such an assessment would be consistent with the evidence on the claimant's health history, combination of impairments, clinical and radiologic findings, and course of treatment, during the period at issue, as discussed in greater detail above (see Exhibit 3F; Exhibit 8F; Exhibit 10F; Exhibit 12F). Based on this partial consistency, these oncology notes are

---

[63] *Celaya*, 332 F.3d at 1183–84.

somewhat persuasive, to the extent reflected in the above residual functional capacity.[64]

In his Brief, the Commissioner does not contest Plaintiff's argument that the Performance Status ratings do not qualify as medical opinions.[65] And the Court finds that, on the present record, these Performance Status ratings do not qualify as medical opinions as defined by the social-security regulations:

> [a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . (i)(A) [y]our ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching).[66]

First, after September 14, 2021, the oncology treatment ECOG Performance Status Grade 1 notes include both "work of a light or sedentary nature," and thus does not serve as substantial evidence to support the ALJ's modified light-work RFC, rather than a sedentary-work RFC, particularly considering Plaintiff's hip, knee, and spine impairments, which showed reduced range of motion in her left hip and knee and instability of her left femoral-acetabular joint.[67] Moreover, the medical records reflect that Plaintiff experienced cumulative fatigue, anemia, and

---

[64] AR 26–27.

[65] ECF No. 10.

[66] 20 C.F.R. § 416.913(a)(2).

[67] *See* AR 330, 352, 360, 531, 718, 752, 959–62, 992, 1005, 1129, 1348.

pain in her right breast and armpit due to cancer treatments, as well as suffered from migraines.

Second, there is no evidence indicating that oncology providers were offering an opinion about Plaintiff's ability to sustain the physical demands of a full-time job.[68] Instead, the purpose of the Performance Status ratings was to measure how Plaintiff's cancer treatment impacted her selfcare and other activities:[69]

| GRADE | ECOG PERFORMANCE STATUS |
|---|---|
| 0 | Fully active, able to carry on all pre-disease performance without restriction |
| 1 | Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work |
| 2 | Ambulatory and capable of all selfcare but unable to carry out any work activities; up and about more than 50% of waking hours |
| 3 | Capable of only limited selfcare; confined to bed or chair more than 50% of waking hours |
| 4 | Completely disabled; cannot carry on any selfcare; totally confined to bed or chair |
| 5 | Dead |

---

[68] *See* Social Security Ruling (SSR) 96-8p (defining a "regular and continuing basis" to mean "8 hours a day, for 5 days a week, or an equivalent work schedule").

[69] https://ecog-acrin.org/resources/ecog-performance-status/#:~:text=It%20describes%20a%20patient's%20level%20of%20functioning,cancer%20clinical%20trials%20to%20study%20new%20treatments (last viewed Feb. 26, 2025)

There is no information before the Court that "work of a light or sedentary nature" under Grade 1 is consistent with "light work" or "sedentary work" for social-security purposes.[70] Instead, when considering the ECOG Performance Status Scale along with the other scale used to assess the functional status of cancer

_____

[70] 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); *Id.* § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

patients—Karnofsky Performance Status Scale—it seems that ECOG Grade 1 includes persons who are unable to "carry on normal activity or do active work":[71]

| ECOG PERFORMANCE STATUS | KARNOFSKY PERFORMANCE STATUS |
|---|---|
| 0—Fully active, able to carry on all pre-disease performance without restriction | 100—Normal, no complaints; no evidence of disease<br>90—Able to carry on normal activity; minor signs or symptoms of disease |
| 1—Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work | 80—Normal activity with effort, some signs or symptoms of disease<br>70—Cares for self but unable to carry on normal activity or to do active work |

Thus, it appears that ECOG Performance Grade 1 may include persons who are unable to sustain fulltime work.

It was error for the ALJ to find these Performance Status ratings "somewhat persuasive to the extent reflected in the" modified light-work RFC. Rather than base her RFC on a medical opinion or administrative finding, the ALJ interpreted the raw medical data to formulate Plaintiff's RFC. The ALJ should have instead obtained a medical opinion on Plaintiff's functional capacity.[72] This is a record that

---

[71] https://ecog-acrin.org/resources/ecog-performance-status/ (last viewed Feb. 26, 2025).

[72] *See, e.g.*, Hearing, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 & I-2-5-34.

clearly establishes severe impairments but is ambiguous as to Plaintiff's resulting functional limitations. Without a medical opinion, the current record is inadequate to allow for proper formulation of an RFC.[73] This is not a case where Plaintiff is arguing that an updated medical opinion is needed in order for the ALJ to properly formulate the RFC—here, there was no medical opinion on which the ALJ relied. Dr. Hurley and Dr. Clifford themselves stated that the medical records at the time they reviewed the file were insufficient to fully rate Plaintiff's physical impairments.[74] The ALJ should have either called a medical expert to testify or have informed Plaintiff that she was to appear at a consultative examination.[75] On remand, the ALJ is to obtain a medical opinion from a source who has been afforded an opportunity to review the medical record, and the ALJ is to then make findings at each of the five steps of the sequential-evaluation process.

---

[73] Contrary to the Commissioner's argument, *Farlow v. Kijakazi* does not stand for the proposition that in the absence of a medical opinion in the record the ALJ may interpret raw medical data and formulate a claimant's RFC. 53 F.4th 585, 588 (9th Cir. 2022) (affirming the ALJ's decision to give little weight to the only medical opinion of record because the ALJ cited specific medical evidence that contravened the medical opinion).

[74] AR 106, 117.

[75] If a claimant fails to attend a consultative examination, the ALJ is to consider whether the claimant had a good reason for failing at attend. 20 C.F.R. § 416.918.

1  **B.      Other Steps: The ALJ must reevaluate on remand.**

2           Given the ALJ's error, the Court does not analyze Plaintiff's remaining

3  claims. Further development is necessary to resolve ambiguities and allow for a

4  proper disability determination.[76]

5                          **IV.      Conclusion**

6           Plaintiff establishes the ALJ erred. On remand, the record is to be

7  developed, and the ALJ is to reevaluate—with meaningful articulation and

8  evidentiary support—the sequential process.

9           Accordingly, **IT IS HEREBY ORDERED**:

10          1.      The ALJ's nondisability decision is **REVERSED, and this matter is**

11                  **REMANDED to the Commissioner of Social Security for**

12                  **further proceedings pursuant to sentence four of 42 U.S.C. §**

13                  **405(g)**.

14          2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and**

15                  **10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

16  ///

17  ///

18  //

19  /

20

21  ──────────────

    [76] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*,

22  759 F.3d 995, 1020 (9th Cir. 2014).

23

1          IT IS SO ORDERED. The Clerk's Office is directed to file this order and

2    provide copies to all counsel.

3          DATED this 26th day of February 2025.

4          _____

5          EDWARD F. SHEA
           Senior United States District Judge